Affirmed and Memorandum Opinion filed April 17, 2008








Affirmed and Memorandum Opinion filed April 17, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-01118-CR

____________

 

PATRICK LEE CAMPBELL, JR., Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 122nd
District Court

Galveston County, Texas

Trial Court Cause No. 05CR3222

 



 

M E M O R A N D U M   O P I N I O N

A jury convicted appellant Patrick Lee Campbell, Jr. of
felony evading arrest and assessed punishment at twenty-four months= confinement in
the State Jail Division of the Texas Department of Criminal Justice and a $10,000.00
fine.  In a single issue, Campbell contends that the evidence is factually
insufficient to support his conviction because the overwhelming weight of the
evidence established that appellant could not be identified as the suspect who
was fleeing from police officers.  We affirm.








Factual
Background

Around 1:30 a.m. on November 16, 2005, a security guard at
Amoco Pipeline in Texas City, Texas, in Galveston County, called the Texas City
Police Department to report two people on the premises possibly breaking into
cars.  The security guard reportedly scuffled with one of them, but the
suspects fled on foot.  It was also reported that a small foreign car, either a
Toyota or a Honda, was seen leaving the premises.[1] 
The dispatcher informed three patrol officers, Officer Brett Cyr, Officer Allen
Bjerke, Jr., and Officer Earl Mendenhall, of the report.  Each of the officers
was in uniform and alone in a marked police vehicle, and each responded to the
dispatcher=s call.  








Bjerke testified that as he searched the area he saw what
he believed was the suspect car, and notified Mendenhall that he was going to
conduct a traffic stop on it.  Bjerke activated his emergency lights and the
car began to pull over.  At the same time, Mendenhall arrived and positioned
his vehicle in front of the car at an angle.  As Bjerke got out of his vehicle,
the driver of the suspect car accelerated very rapidly, went around Mendenhall=s vehicle, and
sped away.  Bjerke did not get a look at the suspect at that time.  Bjerke and
Mendenhall pursued the car, which was traveling at high speeds, at times in
excess of seventy miles per hour.  The pursuit continued from Texas City into
La Marque, where the car began turning onto residential streets.  Eventually,
the driver of the car lost control, spun around, and came to a stop.  Bjerke
stopped a few feet from the car, a Honda, and began to get out of his vehicle
when the Honda accelerated quickly, causing its tires to smoke.  The Honda went
past Bjerke=s vehicle, struck Mendenhall=s vehicle, and
continued down the street.  Eventually, however, the driver of the Honda lost
control of the car again and crashed into a fence.  By the time Bjerke reached
the car, it was empty.  He did not see anyone get out of the car.

Cyr was only briefly involved in the pursuit of the suspect
car, catching up to it in La Marque.  He testified that he saw a lot of smoke,
and people Awrecking out.@  As he pulled up,
he saw a small white car come out of the smoke and almost hit him head-on.  The
car then veered, spun out, and wrecked.  The suspect fled on foot.  Cyr could
not identify anybody in the car. 

Mendenhall testified that, when he positioned his vehicle
in front of the Honda as Bjerke attempted to conduct the traffic stop, he got a
Agood look@ at the suspect as
he shined his spotlight directly in the suspect=s face.[2] 
He could see appellant Alooking left and right,@ which gave him
the impression he was trying to find an escape route.  Mendenhall further
testified that he Acould clearly see him@ and that he was
able to view him for six or seven seconds.   Mendenhall identified appellant in
court as the suspect he saw that night.  

After the suspect hit the passenger side door of Mendenhall=s police vehicle,
Mendenhall testified that the suspect continued to flee until he crashed.  By
the time Mendenhall reached the Honda, it was unoccupied, and the driver could
not be seen.  A dispatcher informed Mendenhall that the address of the
registered owner of the Honda was 847 Holly in La Marque, which was close to
where the Honda finally came to a stop.  Mendenhall testified he and a La
Marque officer ran to the house and saw Alice Campbell, appellant=s sister, standing
on the front porch.  She allowed them inside, where they searched for the
suspect, but did not find him.  Campbell confirmed that she owned the Honda. 
Mendenhall testified that, when he asked her who the last driver was, she
answered that it was Patrick Campbell, her brother.  Mendenhall testified that
he recognized appellant in a photograph in a collage on a wall of the house,
and Campbell confirmed that the person in the photograph was her brother. 








The State also called Alice Campbell, who testified that
she had been asleep in the house when police arrived and knocked on her door. 
She testified that she owned the Honda, and she had driven it home from work
that day.  She testified that she did not normally lock her car, and sometimes
she has left the keys in the car.  She could not remember if she locked the car
that night.  She also testified that she sometimes left the front door of the
house unlocked.  Campbell testified that appellant had never driven her car and
she did not let anyone other than her mother drive it, but she acknowledged
that appellant had ridden in the car with her.  Campbell testified that, when
the officers came to her house, one of them asked if she had a picture of her
brother, and, as she looked for one on a table, the officer asked if that was
him in a photograph on the wall.  She confirmed that it was.  She also
testified that the photograph, which depicted appellant and a male friend, was
the only picture of a black male on the wall.  Recalled during the defense=s presentation of
its case, Campbell clarified that she meant that there were no pictures of
African-American men other than appellant in the house.  She also denied
telling Mendenhall that appellant had driven her car.  She explained that what
she had told the officer was that the last time she had seen appellant was that
morning, when he had come to her job to ask her for money.








Audrey Dickson-Walker, appellant=s mother,
testified in his defense.  She testified that she and her husband owned the
house at 847 Holly, and that appellant had lived there previously but never had
keys to the house.  She also testified that she and her husband lived in Texas
City, but appellant was not at home with her on the night of the incident.  Ms.
Dickson-Walker further testified that she hung the photographs on the wall of
the Holly house.  She stated that there were about five pictures on the wall,
and, with the exception of the one photograph in the collage, appellant was the
only adult male in the photographs.  In the collage, there was one photograph
of appellant with a male friend.  Ms. Dickson-Walker acknowledged that her
daughter, Alice Campbell, was sometimes not as careful as she should be about keeping
the house and car locked, and that Campbell sometimes left her keys in her
car.  She testified that appellant did not own a car, but he had borrowed her
truck a few times.  She also testified that she never saw appellant drive
Campbell=s car, and to her
knowledge, he had never driven it.

The defense also called Delia Randle, who testified that
appellant was her boyfriend and that he was living with her and her daughter at
her home in Texas City at the time of the incident.  She testified that, on the
night of November 16, appellant got home around 9:00 p.m.  That night, she
talked on the phone in the bedroom, while appellant watched television in
another room.  She went to bed around 2:00 a.m.  Randle testified that she
never saw appellant leave the house that night.  On cross-examination, Randle
admitted that she did not go to the police with this information, but testified
that in January 2006, she gave a written statement to the District Attorney=s office in which
she stated that appellant was at her house at the time of the incident and so
could not be the man the police were chasing.  

Along with the charge of evading arrest, appellant was also
tried in a separate cause for aggravated assault on a public servant before the
same jury.  The jury found appellant guilty of evading arrest, but found him not
guilty of the aggravated assault.  This appeal of the evading arrest conviction
followed.

Analysis
of Appellant=s Issue








The State had the burden of proving, beyond a reasonable
doubt, that appellant intentionally fled from a person he knew was a peace
officer attempting to lawfully arrest or detain him.  See Tex. Penal Code ' 38.04(a).  Appellant
contends that the evidence that he was the suspect who fled is factually
insufficient to sustain his conviction because the only evidence the State
presented was Officer Mendenhall=s testimony that
he was able to identify appellant after viewing his face for six or seven
seconds, and his subsequent identification of appellant after seeing appellant=s photograph on a
wall that contained no other photographs of a black male in the house where
Alice Campbell, appellant=s sister, lived.  Appellant points out
that Mendenhall=s testimony conflicts with the testimony
of Campbell, who testified that appellant had not been to her house on the
evening of the incident and did not drive her car, and the testimony of
appellant=s girlfriend, Delia Randle, who testified that
appellant was with her that night, and that she had given a written statement
to that effect to the District Attorney=s office. 
Appellant also complains that the security guard who reported struggling with
the suspect was not called to testify, and the police failed to fingerprint
Campbell=s car as a means
of identifying the suspect.  We address appellant=s contentions
below.

A.      Standard of
Review

When conducting a factual‑sufficiency review, we view
all of the evidence in a neutral light.  See Cain v. State, 958 S.W.2d
404, 408 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 134
(Tex. Crim. App. 1996).  We may set the verdict aside if (1) the evidence is so
weak that the verdict is clearly wrong and manifestly unjust, or (2) the
verdict is against the great weight and preponderance of the evidence.  Watson
v. State, 204 S.W.3d 404, 414B15 (Tex. Crim.
App. 2006) (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000)).  However, while we may disagree with the jury=s conclusions, we
must exercise appropriate deference to avoid substituting our judgment for that
of the jury, particularly in matters of credibility.  Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005); see also Watson, 204 S.W.3d
at 414 (stating that a court should not reverse a verdict it disagrees with
unless it represents a manifest injustice, though supported by legally sufficient
evidence).  Thus, while we are permitted to substitute our judgment for the
jury=s when considering
credibility and weight determinations, we may do so only to a very limited
degree.  Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). 

B.      The
Evidence is Factually Sufficient








Appellant first contends the testimony of Alice Campbell,
appellant=s sister, and Delia Randle, appellant=s girlfriend,
contradicts Officer Mendenhall=s positive identification of appellant as
the driver of the white Honda.  Mendenhall testified that when the suspect=s car pulled off
the road in front of Officer Bjerke, he stopped his car in front of the Honda
and shined his spotlight directly on the suspect=s face. 
Mendenhall testified he was able to clearly see the suspect=s face for six or
seven seconds.  Later, at the home of Alice Campbell, appellant=s sister and the
owner of the Honda, Mendenhall recognized appellant in a photograph as the
driver of the Honda he saw earlier.  The photograph was admitted into evidence
for the jury=s consideration.  Mendenhall also positively
identified appellant in the courtroom as the driver of the Honda.  Further, on
cross-examination, Mendenhall testified that there was Ano possibility@ that he
mistakenly identified appellant as the driver.  Mendenhall also testified that
Alice Campbell told him that appellant was the last person to drive her car. 

In contrast, Alice Campbell denied that she told Mendenhall
that appellant was the last person to drive her car.  However, she admitted
that she normally does not lock the car and sometimes leaves her keys in the
car.  She also did not know where she had left her keys the night the car was
taken.  She testified that appellant did not have her permission to drive her
car, but offered no information as to who might have been driving it that
night.  

Debra Randle testified that appellant lived with her and
that he was with her on that night, watching television in another room while
she talked on the phone in the bedroom until she went to bed around 2:00 a.m. 
Randle also testified that she made a written statement that appellant was at
her house that night and delivered it to the District Attorney=s office, some two
months after the incident.  The substance of this statement consisted of the
following sentence:  ATo whom this may concern on the morning of
11-16-05 at 1:38 am Patrick Lee Campbell was at my house, so that couldn=t have been
Patrick Lee Campbell that the police were chasing.@  The statement
contained no other details or contact information for Randle.  








Contradictory testimony is a factor for the jury to
consider, but merely because the testimony is contradictory does not mean that
the evidence is factually insufficient to support appellant=s conviction. 
Unless the record clearly reveals a different result is appropriate, we must
defer to the jury=s determination concerning what weight to
give contradictory testimonial evidence because its resolution often turns on
the jury=s evaluation of
the credibility and demeanor of the witnesses.  See Watson, 204 S.W.3d
at 414; Johnson v. State, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000). 
Although we may disagree with the jury=s conclusions, we
may do so only Ato a very limited degree.@  See Marshall,
210 S.W.3d at 625.  

Here, we cannot say that the jury=s decision is
manifestly unjust merely because the jury resolved conflicting views of the
evidence in favor of the State.  Officer Mendenhall, a veteran police officer,
testified that he clearly saw appellant=s face for several
seconds as he shined a spotlight on him, and he later recognized appellant in a
photograph at the home of Alice Campbell, appellant=s sister and the
owner of the Honda.  Further, Mendenhall positively identified appellant in court
as the suspect he saw driving the Honda that night.  Although appellant appears
to suggest that Mendenhall=s identification of appellant was a
foregone conclusion because the only pictures of a black male in the house were
of appellant, the photograph at issue showed appellant with a black male
friend, and the jury was free to consider the photograph as well as the other
evidence presented.  

Next, appellant complains that the security guard who
initially reported seeing two suspects, and scuffled with one of them, was not
called to testify concerning the suspect=s identity, and
the police did not fingerprint the Honda, which appellant contends Awould have been a
sure way to identify the suspect.@  However, the
State can meet its burden without such evidence, especially in light of the
evidence of Mendenhall=s positive identification of appellant and
the other evidence of appellant=s guilt in this case.  Merely because the
State did not present evidence of the type appellant suggests does not render
the State=s evidence factually insufficient.  








Our review of the record as a whole, with consideration
given to all of the evidence both for and against the jury=s finding, has not
caused us to conclude that the proof of appellant=s guilt is so
greatly outweighed by contrary proof as to render his conviction clearly wrong
or manifestly unjust, or that the verdict is against the great weight and
preponderance of the evidence.  Therefore, we hold that the evidence is
factually sufficient to support the jury=s verdict.  We
overrule appellant=s sole issue.

Conclusion

We overrule appellant=s issue and affirm
the trial court=s judgment.

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed April 17, 2008.

Panel consists of
Justices Yates, Fowler, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Testimony varied concerning the color of the small foreign car reported
leaving Amoco Pipeline.  Officer Bjerke testified that they were unsure about
the color of the car initially.  Cyr testified that one of the other officers
reported that they were pursuing a white compact car, but he agreed on
cross-examination that the original report indicated that the car was red. 
Mendenhall testified that initially the car was believed to be red, but that
was later revised to an unknown color.





[2]  Although Mendenhall tried to get appellant=s face on his vehicle=s camera, he explained that he was
unable to do so because of the glare from his spotlight.